**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LIBERTY INSURANCE UNDERWRITERS INC., <br><br> Plaintiff(s), <br><br> v. <br><br> WILLIAM SCUDIER, et al., <br><br> Defendant(s). | 2:12-CV-1549 JCM (VCF) |

**ORDER**

Presently before the court is plaintiff Liberty Insurance Underwriters Inc.'s motion for summary judgment. (Doc. # 20).[1] Defendant Patrick Dillon responded (doc. # 32), and plaintiff replied (doc. # 33).

---

[1] Or in the alternative, motion for partial summary judgment. In support of this motion, plaintiff filed a memorandum (doc. # 21), statement of undisputed facts (doc. # 22), declarations (docs. # 24 & 25), and a request for judicial notice (doc. # 26). Plaintiff requests the court to take judicial notice of: (1) exhibit A, Dillon's second amended complaint in the underlying state court action; (2) exhibit B, judgment of conviction of Scudier in criminal action; (3) exhibit C, order granting summary judgment in favor of the association; (4) exhibit D, nomination and consent of guardianship; (5) exhibit E, complaint filed by Discover Property in this court in case no. 12-cv-1549-JCM-NJK; and the following produced by Dillon in his Fed. R. Civ. 26 disclosure: (6) exhibit F, Scudier's deposition taken in the underlying action; (7) exhibit G, Dillon's deposition taken in the underlying action; (8) exhibit H, Dillon's grand jury testimony in criminal proceedings; and (9) exhibit I, Dillon's statement to Henderson Police Department. (*See* doc. # 26). Federal Rule of Evidence 201(b) provides: A judicially noticed fact must be one not subject to reasonable dispute and that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Pursuant to Fed.R.Evid. 201, a court may judicially notice matters of public record. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004). To the extent these exhibits satisfy the requirements of Fed. R. Evid. 201, plaintiff's request is granted.

**James C. Mahan**
**U.S. District Judge**

Also before the court is defendant Dillon's counter-motion to stay. (Doc. # 34). Plaintiff responded (doc. # 35), defendant Dillon replied (doc. # 36).

Last, before the court is plaintiff's motion for default judgment against defendant William Scudier. (Doc. # 27).[2]

## I. Factual background

This action is an insurance coverage lawsuit seeking a declaration of non-coverage for William Scudier's ("Scudier") intentional abuse and molestation of Patrick Dillon ("Dillon"). Scudier was employed as a maintenance supervisor by Victory Village 2004, LLC ("Victory Village") and B&R Property Management ("B&R") (collectively "the association"). Dillon lived in the association and was 13 years old at the time of the abuse.

### A. Underlying state action

In state court, Dillon filed a lawsuit against Scudier, Victory Village, and B&R for Scudier's intentional abuse and molestation of Dillon.[3] Dillon's second amended complaint asserts the following causes of action: (1) battery against Scudier; (2) assault against Scudier; (3) intentional infliction of emotional distress against Scudier; (4) false imprisonment against Scudier; (5) negligent hiring against Victory Village and B&R; (6) negligent supervision against Victory Village and B&R; (7) negligent retention against Victory Village and B&R; (8) gross negligence against Victory Village and B&R; and (9) respondeat superior against Victory Village and B&R.[4] (Doc. # 26, Ex. A).

The underlying complaint contains the following critical factual allegations supporting Dillon's claims for relief:

. . .

---

[2] In support of the application for default judgment, plaintiff filed a memorandum (doc. # 28), a declarations (docs. # 29 & 30), and a request for judicial notice (doc. # 31). Plaintiff requests the court take judicial notice of the same documents referenced in doc. # 26. The court's ruling as to these documents is the same as stated in *supra* n.1.

[3] This case is currently pending in Clark Country District Court, case no. A-10-609918-C.

[4] The trial court granted summary judgment in favor of Victory Village and B&R. (*See* doc. # 26, Ex. C). This order is on appeal.

| | | |
|---|---|---|
| 1 | ¶ 6 | In October 2004, Patrick ("Dillon") along with his mother Joann Dillon, and her |
| 2 | | boyfriend, Denver Lacey, moved into Apt. 627 at Victory Village. |
| 3 | ¶ 7 | Patrick was twelve (12) years old at this time. |
| 4 | ¶ 14 | Patrick began living with Scudier during January 2006. |
| 5 | ¶ 16 | In late-January 2006, Scudier performed oral sex on Patrick for the first time. |
| 6 | ¶ 17 | From January 2006 through August 2006, Scudier performed oral and anal sex on |
| 7 | | Patrick numerous times. |
| 8 | ¶ 18 | The frequency of the sexual contact varied from once a month to multiple times per |
| 9 | | week. |
| 10 | ¶ 19 | Patrick was thirteen (13) years old throughout the duration of the sexual relationship |
| 11 | | between he and Scudier. |
| 12 | ¶ 23 | On April 20, 2007, Scudier was charged with twenty-three (23) counts of Sexual |
| 13 | | Assault with a Minor Under Fourteen Years of Age, and twenty-three (23) counts of |
| 14 | | Lewdness with a Child Under the Age of 14. |
| 15 | ¶ 24 | On October 15, 2008, Scudier pled guilty to three counts of felony Coercion, |
| 16 | | pursuant to NRS §§ 207.190 and 175.547, stemming from his relationship with |
| 17 | | Patrick. |
| 18 | ¶ 42 | Scudier restrained Patrick within Scudier's apartment without legal justification or |
| 19 | | consent. |
| 20 | ¶ 45 | At some point in February 2006, Scudier took Patrick to the Fiesta Hotel and Casino |
| 21 | | in Henderson, Nevada. |
| 22 | ¶ 46 | At some point in June 2006, Scudier took Patrick to the Green Valley Ranch Resort, |
| 23 | | Spa & Casino in Henderson, Nevada. |
| 24 | ¶ 47 | At some point in June 2006, Scudier took Patrick to the Longhorn Hotel and Casino |
| 25 | | in Las Vegas, Nevada. |
| 26 | ¶ 48 | At some point in August 2006, Scudier took Patrick on a trip to Zion National Park |
| 27 | | in Utah. |
| 28 | | |

**James C. Mahan**
**U.S. District Judge**

1  ¶ 50    Patrick could not reasonably have exited or escaped these premises, which were
2          miles form his home.

(Doc. # 26, Ex. A).

**B.    Insurance policies**

Liberty Insurance Underwriters Inc. ("plaintiff" or "Liberty") issued two excess "follow-form" liability policies under which the association claims insured status. (Doc. # 24, Ex. A & B). The Liberty policies were specifically excess to underlying commercial general liability policies issued by Discovery Property and Casualty Insurance Company ("Discover"). (Doc. # 24, Ex. C; doc. # 26, Ex. E). The Liberty policies incorporate all policy language from the Discover policies, and thus follow form to the Discover policies, subject to the terms, conditions, exclusions and limitations of the Liberty policies.

The Liberty policies provide, in part:

> We will pay on behalf of the Insured "loss" that results from an occurrence during the policy period." We will pay "loss" in excess of the Underlying Insurance shown in Item 5 of the Declarations, but only up to an amount not exceeding our Limits of Liability as shown in Item 4 of Declarations. Except for any definitions, terms, conditions and exclusions of this policy, the coverage provided by this policy is subject to the terms and conditions of the First Underlying Insurance Policy, as shown in Item 5 of the Declarations.

(Doc. # 24, Exs A & B, § I).

Scudier contends he is an insured under the Discover policies and thus, by definition, an "insured" under the Liberty policies and therefore is entitled to coverage under the policies for claims in the underlying action. (*See* discussion *infra*, I.B.).

**C.    Instant action**

Plaintiff filed the instant action seeking declaratory relief against Scudier and Dillon. (Doc. # 1 ). Scudier was timely served; however, Scudier failed to answer or otherwise respond. The court enters default judgment against Scudier (*see* discussion *infra*, IV). Thus, Dillon is the only relevant defendant for purposes of the summary judgment motion.

Plaintiff seeks a declaration stating that Liberty has no duty to defend or indemnify Scudier in relation to the underlying state action. (Doc. # 1). Plaintiff now moves this court to enter judgment

**James C. Mahan**
**U.S. District Judge**

- 4 -

in its favor against Dillon and default judgment against Scudier. (Docs. # 21 & 27). Dillon has filed a counter-motion to stay this action pending resolution of an appeal in the underlying action. (Doc. # 34). The court addresses each motion in turn.

**II.     Motion for summary judgment (doc. # 20)**

    **A.     Legal standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

James C. Mahan
U.S. District Judge

- 5 -

party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

**B.   Discussion**

"An insurance policy is a contract." *Senteney v. Fire Ins. Exch.*, 101 Nev. 654, 655 (1985). A court "should not rewrite contract provisions that are otherwise ambiguous." *Id.* Summary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning. *See United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988); *see also Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir.1985). Interpretation of the contract, including whether it is ambiguous, is a matter of law. *Framers Ins. Exchange v. Neal*, 119 Nev. 62, 64 (2003); *Beck Park Apts. v. United States Dep't of Housing*, 695 F.2d 366, 369 (9th Cir. 1982). In Nevada, contractual construction is a question of law and "suitable for determination by summary judgment." *Ellison v. Cal. State Auto Ass'n*, 106 Nev. 601, 603 (1990).

### I.   Nevada insurance law[5]

Generally, "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). "Insurance policies are contracts to which ordinary rules of contractual interpretation apply." *Maryland Casualty Co. v. Nationwide Ins. Co.*, 65 Cal.App.4th 21, 28 (1998). The court should "look first to the language of the contract in order to ascertain its plain

---

[5] "In the context of interpreting insurance policy terms, the Nevada Supreme Court has often looked to persuasive precedent from other jurisdictions, especially California." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F.Supp.2d 1223, 1235 (D.Nev. 2010).

**James C. Mahan
U.S. District Judge**

- 6 -

meaning . . . ." *Waller*, 11 Cal.4th at 18. "A policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable." *Id.* (quotations omitted). "Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." *Kazi v. State Farm Fire and Cas. Co.*, 24 Cal.4th 871, 879 (2001).

"An insurer must defend any action that asserts a claim potentially seeking damages within the coverage of the policy." *Maryland Casualty Co.*, 65 Cal.App.4th at 32 (quoting *Montrose Chemical Corp. v. Super. Ct.*, 6 Cal.4th 287, 295 n.3 (1993)); *see also Buss v. Sup. Court*, 16 Cal.4th 35, 46 n.10 (1997) (holding that the duty to defend is dependent on "at least potential coverage."). "[T]he duty to defend may exist even where coverage is in doubt and ultimately does not develop . . . ." *Kazi*, 24 Cal.4th at 879; *see also Quan v. Truck Ins. Exch.*, 67 Cal.App.4th 583 (1998).

"[T]he duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller*, 11 Cal.4th at 19. "[W]here there is no potential for coverage, there is no duty to defend." *Infinet Mktg. Servs., Inc. v. Am. Motorist Ins. Co.*, 150 Cal.App.4th 168, 177 (2007); *see also Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1268 (9th Cir. 2010) (holding that the duty to defend does not exist where there is no legal theory or facts in the underlying complaint to potentially give rise to coverage) (citing *Gunderson v. Fire Insurance Exch.*, 37 Cal.App.4th 1106 (1995)).

"[A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Food Pro Int'l, Inc. v. Farmers Ins. Exch.*, 169 Cal. App. 4th 976, 985 (2008) (citing *Waller*, 11 Cal.4th at 19; *Montrose Chemical Corp.*, 6 Cal.4th at 295). "Nevada has adopted the 'complaint rule,' pursuant to which an insurer that seeks to avoid its duty to defend its insured may only do so by comparison of the complaint in the underlying litigation to the terms of the policy." *OneBeacon Ins. Co. v. Probuilders Specialty Ins. Co.*, No. 3:09–CV–36–ECR–RAM, 2009 WL 2407705, at *8 (D. Nev. 2009) (citing *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 120 Nev. 678, 686 (2004)).

. . .

. . .

James C. Mahan
U.S. District Judge

- 7 -

### ii. Analysis

As an initial matter, the court acknowledges that it has previously granted declaratory relief in favor of Discover on the basis that Discover's policies did not, as a matter of law, extend to Scudier's conduct at issue in the underlying state court action. (*See Discover Prop. & Cas. Ins. Co. v. Scudier*, 2:12-CV-836 JCM CWH, 2013 WL 2153079 (D. Nev. May 16, 2013)). To resolve the instant matter, the court could simply find that because Discover, the issuer of the first underlying insurance policies, does not have a duty to defend or indemnify Scudier in the underlying action–that plaintiff, as the issuer of excess insurance, also does not have a duty to defend or indemnify. However, the court, in an abundance of caution, looks to the merits of plaintiff's arguments.

But the court need not look far. While plaintiff asserts several arguments as to why coverage is barred, plaintiff's first argument–that Dillon cannot demonstrate that Scudier qualifies as an "insured" in relation to the state action–serves as a sufficient basis to grant declaratory relief in favor of plaintiff.

The Liberty insurance policies only cover those who are an "insured". Scudier is an insured "only for acts within the scope of [his] employment by [the association] or while performing duties related to the conduct of [the association's] business." (Doc. # 24, Ex. C). As the Nevada state court held in granting summary judgment in favor of Victory Village and B&R:

> The alleged sexual relationship between Plaintiff Patrick Dillon and Scudier was a truly independent venture and not committed in the course of the very task assigned to Scudier as the maintenance supervisor.
>
> The allegations of a sexual relationship between Scudier and Patrick Dillon were not acts performed on behalf of Victory Village or B&R Property Management or committed out of any sense of duty to his employers.

(Doc. # 26, Ex. C, at 4, ¶¶ 6-7). This court agrees with the Nevada state court's conclusion. Scudier's acts of molestation were not within the scope of his employment, were not within the course of his job duties, and were not intended to benefit his employer. Instead, Scudier was acting in an intentional manner independent from his employment with the association. *See, e.g.*, *Wood v. Safeway, Inc.*, 121 P.3d 1026 (Nev. 2005); *see also J.C. Penney Co. v. Gravelle*, 155 P.2d 477 (Nev.

1945); *see also Capitol Indem. Corp. v. Wright*, 341 F. Supp. 2d 1152, 1157 (D. Nev. 2004).[6] Dillon has not set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. As such, the court finds that Scudier does not qualify as an "insured," as a matter of law, for the claims against him in the underlying state court action. Scudier's failure to invoke coverage under these policies warrants granting plaintiff's request for declaratory relief.[7]

Accordingly, the court finds that there is no genuine issue of material fact that Scudier does not qualify as an "insured" and therefore plaintiff does not have a duty to indemnify or defendant Scudier for any of the acts or omissions complained of in the underlying action.

### III.    Counter motion to stay (doc. # 34)

In Dillon's counter-motion to stay, Dillon requests the court to enter a stay pending resolution of his appeal of a state court order granting summary judgment in favor of Victory Village and B&R, the holders of the insurance policies. Dillon argues these insureds could have their rights under the insurance contract affected if the court grants plaintiff's motion.

Dillon cites *Erie Railway Co. v. Tompkins*, 304 U.S. 64, 71-80 (1938) and argues that the court should apply Nevada substantive law. Specifically, Dillon relies on NRS § 30.130 which states that, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Dillon goes on to compare the requirements of NRS § 30.130 to Fed. R. Civ. P. 19.

---

[6] The court previously questioned Scudier's status as an "insured" stating: "The court has serious doubts as to whether Scudier's actions could be construed to be within the scope of his employment and thus questions whether Scudier is an 'insured'." *Discover Prop. & Cas. Ins. Co. v. Scudier*, 2:12-CV-836 JCM CWH, 2013 WL 2153079, at *4 n.5 (D. Nev. May 16, 2013). The court did not elaborate on this analysis at that time, because the argument was not before the court. Now that argument is properly before the court.

[7] While plaintiff argues that several exclusions also apply, the court does not find that these exclusions warrant a discussion because the court's discussion *infra* II.B.ii. provides an adequate basis to grant the declaratory relief plaintiff seeks. Further, to the extent Liberty relies on exclusions in Discover's policies–*i.e.*, the "abuse or molestation" exclusion, intentional act exclusion–the court finds its discussion and holding in *Discover Prop. & Cas. Ins. Co. v. Scudier*, 2:12-CV-836 JCM CWH, 2013 WL 2153079 (D. Nev. May 16, 2013), equally applicable here given that Liberty's coverage was "subject to the terms and conditions of the First Underlying Insurance Policy." (Doc. # 24, Exs A & B, § I).

James C. Mahan
U.S. District Judge

1  The court denies Dillon's request for four reasons. First, NRS § 30.130 is procedural, not
2  substantive, as demonstrated by Dillon's own comparison of this law's requirements to that of Fed.
3  R. Civ. P. 19. Second, Dillon does not seek to add Victory Village or B&R as party under this rule.
4  Third, this court's order resolves issues of coverage under plaintiff's policies only as to Scudier. This
5  order has no bearing on whether plaintiff owes a duty to defend Victory Village or B&R. And fourth,
6  the causes of action asserted against Scudier and the association are different: battery, assault,
7  intentional infliction of emotional distress, and false imprisonment against Scudier; and negligent
8  hiring, negligent supervision, negligent retention, gross negligence, and respondeat superior against
9  the association.

10  Accordingly, Dillon's counter-motion to stay is denied.

**IV.     Motion for default judgment (doc. # 27)**

12  In the instant action, Scudier was timely served (doc. # 9); however, Scudier has failed to
13  answer or otherwise respond to plaintiff's complaint despite being on notice of plaintiff's claim
14  against him (*see* docket generally). On October 18, 2012, plaintiff filed a motion for entry of default
15  against Scudier. (Doc. # 15). On October 21, 2012, the clerk's office entered default as to Scudier.
16  (Doc. # 16).

17  Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment
18  for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by
19  affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Upon entry of
20  clerk's default, a party may apply to the court for a default judgment. *See* FED. R. CIV. P. 55(b)(2).

21  On October 21, 2012, the clerk entered default against Scudier for his failure to plead or
22  otherwise defend the instant lawsuit. (Doc. # 16). Pursuant to Federal Rule of Civil Procedure 55(b),
23  plaintiff now asks this court to enter default against Scudier.

24  The choice whether to enter a default judgment lies within the discretion of the trial court.
25  *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980). In the determination of whether to grant a
26  default judgment, the trial court should consider the seven factors articulated in *Eitel v. McCool*, 782
27  F.2d 1470, 1471-72 (9th Cir. 1986). These factors are: (1) the possibility of prejudice to plaintiff, (2)

**James C. Mahan**
**U.S. District Judge**

- 10 -

the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits. *Id.* In applying these *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *see* FED.R.CIV.P. 8(d).

The first *Eitel* factor weighs in favor of granting plaintiff's motion because plaintiff will be denied recourse for a final determination of its defense and indemnity obligations. *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Scudier has not answered or otherwise responded to the complaint. By doing so, Scudier is deemed to have admitted the truth of plaintiff's averments. *Id.* The court finds that if plaintiff's motion for default judgment is not granted, plaintiff "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 283 F.Supp.2d 1127, 1177 (C.D. Cal. 2002).

The second and third *Eitel* factors favor a default judgment where the claims are meritorious and the complaint sufficiently states a claim for relief. *See Cal. Security Cans*, 238 F.Supp.2d at 1175; *Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978)). Plaintiff's complaint states a plausible claim that no coverage exists under its policies for the claims Dillon is alleging against Scudier. (*See* doc. # 1). The complaint specifically argues that Scudier does not qualify as an "insured" and points to various provisions that establish that the policies do not cover the conduct alleged in the underlying action. Thus, the court finds that the claims are meritorious and that the complaint sufficiently states a claim for declaratory relief.

Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. *See Cal. Security Cans*, 238 F.Supp.2d at 1176. Plaintiff seeks equitable relief only–an adjudication of the parties' rights and obligations. Because there is no money directly at stake in this litigation the court finds that this factor weighs in favor of granting default judgment.

The fifth *Eitel* factor also favors default judgment. Since there has been default entered against Scudier, the complaint is taken as true. *Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D.

**James C. Mahan**
**U.S. District Judge**

- 11 -

388, 393 (C.D. Cal. 2005). Thus, given the sufficiency of the complaint, evidence of plaintiff's policies, and the claims made against Scudier in the underlying action, "no genuine dispute of material facts would preclude granting [plaintiff's] motion." *Cal. Security Cans,* 238 F.Supp.2d at 1177; *see Geddes,* 559 F.2d at 560.

Applying the sixth factor, the court cannot conclude that Scudier's default is due to excusable neglect. Scudier was properly served with summons and the complaint. (*See* doc. # 9). While the court acknowledges that Scudier is currently incarcerated, the court finds that his failure to respond or litigate this case cannot be attributable to excusable neglect. *See United States v. High Country Broadcasting Co., Inc.,* 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a corporation that failed to appear in the action through licensed counsel).

The final *Eitel* factor weighs against default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472. But the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Cal. Security Cans,* 238 F.Supp. at 1177 (citation omitted). Moreover, Scudier's failure to answer or otherwise respond to the complaint "makes a decision on the merits impractical, if not impossible." *Id.*

Having reviewed plaintiff's motion and evidence previously submitted and considered in this case, and having considered the *Eitel* factors as a whole, the court concludes that the entry of default judgment is appropriate against Scudier.

## V. Conclusion

The court notes that the parties made several arguments and cited several cases not discussed above. The court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of these motions.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Liberty Insurance Underwriters Inc.'s motion for summary judgment (doc. # 20) be, and the same hereby is, GRANTED.

**James C. Mahan**
**U.S. District Judge**

- 12 -

IT IS THEREFORE ORDERED that plaintiff Liberty Insurance Underwriters Inc. does not have a duty to defend or indemnify William Scudier in the state litigation pending in Clark County District Court styled *Dillion v. Scudier*, et al., case no. A-10-609918-C. Plaintiff is entitled to summary judgment in favor of all causes of action asserted in its declaratory relief complaint.

IT IS FURTHER ORDERED that defendant Patrick Dillon's counter-motion to stay (doc. # 34) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff Liberty Insurance Underwriters Inc.'s motion for default judgment against defendant William Scudier (doc. # 27) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the clerk of the court enter judgment in favor plaintiff and close this case.

DATED July 8, 2013.

_/s/ James C. Mahan_
**UNITED STATES DISTRICT JUDGE**